# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| KEITH CURTIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 C 3432 |
| | ) | |
| COSTCO WHOLESALE | ) | |
| CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Costco Wholesale Corporation's (Costco) and Defendant Gail Hinds' (Hinds) motion for summary judgment. For the reasons stated below, the motion for summary judgment is granted in its entirety.

## BACKGROUND

In 2011, Plaintiff Keith Curtis (Curtis) worked for Costco in an Optical Manager position. Hinds was Costco's General Warehouse Manager and the supervisor of Curtis. In September 2011, Curtis took a six-week leave under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 *et seq.*, due to alleged work-related stress and anxiety. After returning to work, Curtis was repeatedly counseled and coached for poor work performance and violation of

workplace rules.  Such performance issues included complaints from customers who were members at Costco about Curtis' conduct.  In April 2012, Curtis was placed on a ninety-day performance improvement plan (PIP) for his alleged performance issues.  In May 2012, Jan Jalowiec (Jalowiec) an employee whom Curtis supervised, came forward and informed Costco management that based on a conversation she had with Curtis, she believed that Curtis was going to commit fraud on Costco by taking a medical leave of absence in order to prevent a demotion and to maintain his managerial pay status.  Costco determined that such conduct by Curtis violated Costco's ethical policies and demoted Curtis to a cashier position in May 2012.  Two days later, Curtis requested another medical leave based on alleged "work-related stress," (Compl. Par. 22), and the leave request was granted.  Curtis also then filed a disability claim with Costco's insurance company claiming that he was unable to perform the duties for a cashier position, which was denied.   After a seven-month absence Curtis returned to work, and Costco placed Curtis in a warehouse where Hinds was not a supervisor.  Costco, after discussing with Curtis potential accommodations, was able to place Curtis in a full-time position again at a warehouse where Hinds does not work.  It is undisputed that Curtis remains employed in that position to this day.

Curtis brought the instant action and includes in his complaint a claim alleging discrimination because of an alleged disability in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* (Count I), an ADA failure-to-accommodate claim (Count I), a FMLA retaliation claim (Count II), and a FMLA

interference claim (Count II).  Defendants move for summary judgment on all claims.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009).  A "genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).  In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party.  *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

# DISCUSSION

## I.  Local Rule 56.1

Curtis repeatedly fails to comply with Local Rule 56.1 in responding to Defendants' statement of material facts.  Curtis improperly provides legal arguments and citations to case law in his responses to Defendants' statement of material facts.  Such responses fail to comply with Local Rule 56.1  *See Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000)(explaining that "[t]he purpose of the 56.1 statement is to identify for the Court the evidence supporting a party's factual assertions in an organized manner: it is not intended as a forum for factual or legal argument").

Curtis also makes a variety of improper objections instead of citing to portions of the record to support his denial of facts.  For example, Defendants assert in Paragraph 20 of their statement of material facts (Paragraph 20) that "[i]n the spring of 2011, Hinds started receiving many member complaints about customer service problems in the Optical Department."  (SF Par. 20).  Curtis fails to admit or deny such facts and instead objects that the facts are "vague and ambiguous."  (R SF Par. 20).  Such facts are entirely relevant to the issue of whether Curtis was meeting his employer's legitimate expectations.  Any complaints by members of Costco about Curtis' dealings with such members would be relevant evidence in assessing Curtis' job performance as manager of the optical department, and whether disciplinary actions are warranted.  Nor is there anything vague about the facts in Paragraph 20.  The facts are straightforward and clear and should have been directly responded to

by Curtis.  Curtis' evidentiary objections are thus entirely without merit.

Curtis also repeatedly fails to cite to specific evidence in the record to support his denial of facts and instead  refers the court to other paragraphs or other responses to the Defendants' statements of facts, or to other briefs filed by Curtis.  Local Rule 56.1 does not provide that a party's responses can simply direct the court to other documents and responses in the record.  LR 56.1.  Curtis repeatedly offers such evasive answers in his Local Rule 56.1 responses, often referring the court to multiple other paragraphs of facts or responses.  For example, in response to Paragraph 25 of Defendants' statement of material facts, Curtis states nothing more than "Deny" and then refers to the court to seven other "Pars." or paragraphs.  (R SF Par. 25).  It is not entirely clear whether Curtis intends to refer to paragraphs of his responses to Defendants' statements of facts or to paragraphs of Curtis' statement of additional facts.  At times in his responses Curtis makes references to paragraphs "below" and to paragraphs "above."  (R SF Par. 23, 25).  Often the reference to numbered paragraphs "below" in the document filed by Curtis could cover both his response to that numbered paragraph of Defendants' statement of facts and to that same numbered paragraph of Curtis' statement of additional facts, which are in that same document.  *See, e.g.* (R SF Par. 7).  To add to the confusion, at times Curtis makes references to other paragraphs by using the symbol "¶" and at other times refers the court to other paragraphs by using the term "Pars."  (R SF Par. 7, 25).

Another example of Curtis' failure to properly dispute facts is in response to Paragraph 53 of Defendants' statement of material facts (Paragraph 53).  In response,

Curtis provides no specific citation to portions of evidence in the record to support his denial of the facts in Paragraph 53.  (R SF Par. 53).   Instead, Curtis refers the court to his entire "Memorandum of Law in Opposition to Costco's motion for summary judgment field [sic] concurrently herewith."  (R SF Par. 53).  Such ambiguous and evasive responses that require the court to sift through a series of cross-indexed responses and other portions of the record does not comply with Local Rule 56.1.  *See Roger Whitmore's Auto. Services, Inc. v. Lake County, Illinois*, 424 F.3d 659, 664 (7th Cir. 2005)(stating that "[i]t is not the duty of the district court to scour the record in search of material factual disputes. . . .").  Thus, Curtis has failed to comply with Local Rule 56.1.


## II.  ADA Claims

Defendants move for summary judgment on the ADA Claims.


### A.  ADA Discrimination Claim

Defendants argue that they are entitled to judgment as a matter of law on the ADA discrimination claim.  For an ADA discrimination claim, a plaintiff must establish: (1) that he "is disabled within the meaning of the ADA," (2) that he "is qualified to perform the essential functions of h[is] job either with or without reasonable accommodation," and (3) that he "has suffered from an adverse employment decision because of h[is] disability."  *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014)(internal quotations omitted)(quoting

*Dvorak v. Mostardi Platt Assoc., Inc.*, 289 F.3d 479, 483 (7th Cir. 2002)). A plaintiff who is bringing an ADA discrimination claim and who is seeking to defeat a defendant's motion for summary judgment can proceed under the direct or indirect method of proof. *Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 683 (7th Cir. 2014).

### 1. Direct Method of Proof

Curtis argues that he can proceed under the direct method of proof on his ADA discrimination claim. A party proceeding under the direct method of proof can present direct evidence of discrimination or present a "convincing mosaic of circumstantial evidence from which a factfinder can make a reasonable inference of discriminatory intent." *Teruggi v. CIT Group/Capital Finance, Inc.*, 709 F.3d 654, 660 (7th Cir. 2013)(internal quotations omitted)(quoting *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004)); *Dickerson v. Board of Trustees of Community College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011)(stating that "[u]nder the direct method, a plaintiff can present either direct or circumstantial evidence to meet its burden"). Curtis argues that he can proceed under the direct method of proof. Curtis fails to present any specific arguments as to the direct and indirect methods of proof his ADA discrimination claim, and instead merely refers the court to his arguments relating to his FMLA retaliation claims. (Ans. SJ 26). However, the legal issue underlying Curtis' ADA discrimination claim, whether there was intent to discriminate against Curtis because of his alleged disability, is not

the same as the legal issue underlying Curtis' FMLA retaliation claim, which is whether there was an intent to retaliate against Curtis because he exercised his FMLA rights. Thus, Curtis' conclusory arguments and reference to his arguments for his FMLA claim are not sufficient to meet his burden to show that he can proceed under the direct method of proof on his ADA discrimination claim. The court also notes that a review of the record shows that there is not sufficient circumstantial or direct evidence for Curtis to proceed under the direct method of proof.

## 2. Indirect Method of Proof

Curtis argues that he can also proceed under the indirect method of proof on his ADA discrimination claim. Under the indirect method of proof, a plaintiff must first establish a *prima facie* case by showing: "(1) that he is disabled under the ADA[,] (2) that he was meeting his employer's legitimate expectations[,] (3) that he suffered an adverse employment action[,] and (4) that similarly situated employees without a disability were treated more favorably." *Bunn*, 753 F.3d at 685. If the plaintiff establishes a *prima facie* case, "the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the adverse employment action." *Id.* If the employer provides such a legitimate reason, the plaintiff must show that the given reason is a pretext. *Id.* (stating that "the employee must prove by a preponderance of the evidence that the employer's stated reason is a lie").

## a. Failure to Meet Employer's Legitimate Expectations

Defendants contend that the undisputed facts show that Curtis was not meeting his employer's legitimate expectations. Defendants point to various instances of poor work performance on the part of Curtis. As indicated above, in Paragraph 20, Defendants assert that "[i]n the spring of 2011, Hinds started receiving many member complaints about customer service problems in the Optical Department." (SF Par. 20). Curtis presents only improper evidentiary objections and fails to cite to evidence in the record to properly dispute such facts. (R SF Par. 20). Thus, Paragraph 20 is deemed undisputed pursuant to Local Rule 56.1. *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003)(indicating that a proper denial of facts must be accompanied by a citation to the record that contains evidence that contradicts the facts); *Senske v. Sybase, Inc.*, 588 F.3d 501, 504 n.1 (7th Cir. 2009)(noting that in the plaintiff's "Local Rule 56.1 statement of facts, [the plaintiff] repeatedly and improperly characterize[d] facts as disputed without citing evidence that directly contradict[ed] [the [plaintiff's] assertions" and that those "responses are insufficient to demonstrate a genuine fact dispute, and where [the plaintiff] ha[d] responded improperly, [the Court] deem[ed] admitted the cited fact"); *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011)(stating that "district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings").

Defendants contend in Paragraph 21 of their statement of material facts (Paragraph 21) that in March 2011, Costco received a member complaint regarding an interaction Curtis had with a Costco member. (SF Par. 21). Curtis again presents

objections that the facts are "vague and ambiguous," and such objections again lack any merit. (R SF Par. 21). The fact that complaints were made by Costco members about Curtis, who was the manager of the optical department, is entirely relevant. Nor is there anything ambiguous about the facts stated in Paragraph 21. Curtis also contends in response to Paragraph 21 that the alleged poor service at issue related to interaction that the member had with Angela Camacho (Camacho), an employee who Curtis supervised, not an interaction with Curtis personally. (R SF Par. 21). Curtis claims that he only met the member when the return was processed by Curtis. (R SF Par. 21). Curtis likewise testified at his deposition when reviewing the complaint made by the member that "the only time that [Curtis] dealt with" the issue "was when [he] did the refund," and that "[t]he entire time before this . . . it was [Camacho] that actually dealt with" the member. (C. Dep. 65). Curtis, when presented with the members' complaint at his deposition, disputed that the members' complaint was about him and stated: "there's nothing that actually says anything bad about me" and "[i]t just says I handled the return." (C. Dep. 65-66). However, a review of the members' complaint shows that the member did indeed specifically complain about Curtis. The member claimed: "Keith, the optical employee who eventually handled the return, said he would talk to management about a return of the additional $75.00 I had to pay out-of-pocket to my ophthalmologist, but to date I have not heard back from Keith." (C. Dep Ex. 3). The member further asserted that he was "disappointed that no one got back to [the member] regarding the $75.00 doctor visit. . . ." (C. Dep. Ex. 3). The member concluded by stating that he doubted that he and

his wife would go to the Costco optical department for any services in the future. (C. Dep. Ex. 3). Thus, the member's complaint clearly indicates that Curtis told the member that he would contact the member about the $75.00 and failed to do so. The record also contains one member complaint dated March 22, 2011, which stated that the "optical manager" was "not very helpful," and a member complaint dated in April 2011, which stated the following: "Keith was rude, short, impersonable, etc." and further stated: "He basically made me feel like he didn't have time for me or to care about customer care." (C. Dep. Ex. 3). To the extent that Curtis might seek to dispute whether the members had valid complaints about Curtis, that does not change the fact that Costco received complaints from customers specifically about Curtis, who was a manager of the optical department. This court does not operate as a superpersonnel office to decide the wisdom of Costco's decisions as to such complaints. Thus, it is undisputed that Costco received complaints from customers about Curtis' work performance.

Curtis also admits that he failed to follow Costco's workplace rules regarding taking absences. For example, Curtis admits that on January 4, 2012, Hinds issued a counseling notice to Curtis for failing to inform management that he was going to be absent. (R SF Par. 42). Curtis further admits that he failed to inform management of his absence, that he should have informed management, and that his counseling notice was neither discrimination nor harassment. (R SF Par. 42). Curtis also admits to facts that indicate that he violated the dress code at Costco for a managerial

position.  (R SF Par. 43).  Curtis admits that he was counseled for wearing a "hoodie" sweatshirt at work.  (R SF Par. 43).  Curtis argues that as to wearing a sweatshirt at work "there is no policy against it" and he was not warned of the policy. (Ans. SJ 2).  However, Curtis admits that he could not "recall any other managers wearing hoodies in the warehouse, and understood that warehouse managers were expected to dress professionally."  (R SF Par. 43).

It is also undisputed that Costco demoted Curtis after Jalowiec came forward and accused Curtis of misconduct.  Curtis admits that in May 2012, Jalowiec told Assistant General Manager Leslie Ingram (Ingram) that based on a conversation with Curtis, Curtis was "scamming" Costco and was going to take medical leave solely for the reason of maintaining his managerial status.  (R SF Par. 50). Thus, it is undisputed that Costco had a complaint from another employee about Curtis' unethical conduct.  It is also undisputed that in a meeting with Paul Michon and Hinds, Curtis was presented with his counseling notice informing him that he was going to be demoted.  (C. Dep. 182-84).  Curtis had an opportunity at that meeting to express his opinions as to whether or not he violated the ethical rules at Costco.  At her deposition, Jalowiec, consistent with her initial statement made to Costco, testified that she believed based on what Curtis told her that he was "scamming the company," and that he was planning to take leave not for legitimate medical reasons, but instead solely to maintain his managerial pay and avoid demotion.  (J. Dep. 106). Jalowiec indicated that she did not feel that it was ethical to take leave "when you're

really not sick or disabled." (J Dep. 106).

Curtis attempts in the instant motion to refute the truth of Jalowiec's story. (Ans. SJ 5). However, it is not appropriate for this court to conduct a mini-trial into the allegations made by Jalowiec and decide who was telling the truth. Nor is it for this court to decide whether the procedures followed by Costco in evaluating the complaint made against Curtis were the result of wise business decisions or whether it was wise for Costco to believe Jalowiec instead of Curtis. This court does not sit as a superpersonnel office in such cases. *See Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005)(stating that a court does "not sit as a superpersonnel department where disappointed applicants or employees can have the merits of an employer's decision replayed to determine best business practices")(internal quotations omitted)(quoting *Holmes v. Potter*, 384 F.3d 356, 361-62 (7th Cir. 2004)).

Thus, there is ample undisputed evidence showing that Costco had received various complaints about the customer service provided by Curtis. There is also undisputed evidence showing that Curtis failed to comply with the Costco workplace policies with regard to taking of absences and dress code. The undisputed record also shows the extensive efforts by Costco to coach and counsel Curtis in order to give him another chance to improve his work performance. However, the undisputed facts also indicate that Curtis failed to heed such warnings and continued his poor work performance. Based on the above, Curtis has not pointed to sufficient evidence to show that he was meeting his employer's legitimate expectations.

b. Similarly-Situated Employees

 As indicated above, Curtis fails to provide more than a conclusory argument as to the indirect method of proof for his ADA discrimination claim. (Ans. SJ 26). Curtis attempts to support his ADA discrimination *prima facie* case by referring to his arguments relating to his FMLA retaliation claim. (Ans. SJ 6). While some of the basic elements for the indirect method of proof for an ADA discrimination claim and a FMLA retaliation claim are similar, the similarly-situated employee element is not the same. In fact, the two claims involve two entirely distinct and separate grounds. For an ADA claim the similarly-situated employees outside of the protected class would need to be non-disabled employees. *See Dickerson*, 657 F.3d at 601 (explaining that for a *prima facie* case under the ADA a plaintiff must show that "similarly situated employees without a disability were treated more favorably"). For the FMLA retaliation claim, the similarly-situated employees outside of the protected class would be employees who did not exercise their FMLA rights. *See Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008)(explaining that for a *prima facie* case for an FMLA retaliation claim that a plaintiff must show that he "was treated less favorably than similarly situated employees who did not engage in statutorily protected activity"). Thus, Curtis' reference to his FMLA arguments is insufficient to support his ADA discrimination *prima facie* case.

A review of Curtis' FMLA arguments also show that they are insufficient to establish a *prima facie* case for his ADA claim. Curtis names three other managers

who he claims were "comparator[s]" and were not demoted after allegedly committing workplace violations that were at least as serious as those committed by Curtis. (Ans. SJ 15-19). However, while Curtis argues that such managers are similar to Curtis, Curtis fails in his response to the instant motion to point to evidence showing or to even assert that such managers were not disabled under the ADA. Nor has Curtis adequately shown that such managers were materially comparable to Curtis. Thus, Curtis has failed to establish the similarly-situated employee element of his *prima facie* case.

### c. Pretext

Defendants argue that even if Curtis could establish a *prima facie* case, he has not pointed to sufficient facts to show that Costco's reason for the demotion was a pretext. The undisputed facts show that the Curtis was twice allowed to take his FMLA leave when Curtis made a request. The undisputed facts further show a consistent history of poor work performance by Curtis, and the counseling and coaching of Curtis, which went unheeded by Curtis. The undisputed facts also show that various customers made complaints about Curtis' work performance and that one employee came forward to accuse Curtis of ethical violations. The undisputed facts further show that Costco has made every effort to continue to provide Curtis with continued employment in other capacities despite his poor work performance in his previous position.

In addition, although Curtis claims that Hinds was attempting to sabotage his employment by unfairly disciplining him, there is ample evidence from sources other than Hinds that document Curtis' extensive work performance issues. The court initially notes that although Curtis contends that Hinds was out to get him, Curtis admits that it was Hinds who interviewed him for the Optical Manager position and selected Curtis to be promoted to the position in 2008. (R SF Par. 10). The record also includes undisputed facts showing the management staff at Costco other than Hinds had found deficiencies in Curtis' work performance. For example, it is undisputed that in December 2011, Ingram prepared a performance review for Curtis in which Ingram identified various deficiencies in Curtis' work performance. (R SF Par. 40). Curtis admits that Hinds had no input in completing the performance review. (R SF Par. 40). Another example includes when Ingram found that Curtis had not complied with the dress code for managerial employees in March 2012 and noted the violation in Curtis' performance log. (R SF Par. 43). Another instance is when Ingram counseled Curtis for failing to properly schedule employees to work. (R SF Par. 44). Also, although Curtis claims that Hinds was behind the PIP issued in April 2012 that preceded his demotion, (Ans. SJ 3), Defendants cite to evidence showing that it was Regional Vice President Dan McMurray who ultimately determined that Curtis should be placed on the PIP, not Hinds. (SF Par. 46). Curtis cites to no evidence to dispute such facts and instead makes several evidentiary objections that lack any merit. (R SF Par. 46). It is also undisputed that when Jalowiec made the allegations of unethical conduct by Curtis, Personnel Specialist

Jonathan Shue (Shue) reviewed the statement presented by Jalowiec and concluded that Curtis had engaged in unethical conduct and violated the Manager Standard of Ethics. (R SF Par. 54). Although Curtis disputes who prepared the counseling notice, he does not dispute such actions and the conclusion by Shue. (R SF Par. 54).

Despite the fact that Costco could have reasonably terminated Curtis' employment based on his poor work performance and ethical violations, Costco ultimately placed Curtis in a full-time position at a warehouse where Hinds does not work and Curtis continues to work to this day in that position. Such facts do not suggest that Costco's reason was a pretext for discrimination. Also, as indicated above, Curtis fails to provide more than a conclusory argument as to the indirect method of proof for his ADA discrimination claim, including the pretext issue. (Ans. SJ 26). The pretext inquiry for the ADA claim focuses on animus due to the plaintiff's disability, while the inquiry for a FMLA retaliation claim is animus due to the exercise of FMLA rights. Thus, Curtis' cursory incorporation of his FMLA arguments as his argument for his pretext argument on his ADA discrimination claim are improper and Curtis has failed to meet his burden. Therefore, Defendants' motion for summary judgment on the ADA discrimination claim is granted.

### B. ADA Failure-to-Accommodate Claim

Defendants argue that they are entitled to judgment as a matter of law on the ADA failure-to-accommodate claim. A plaintiff bringing an ADA failure to

accommodate claim can establish a *prima facie* case by establishing: (1) that "he is a qualified individual with a disability," (2) that "the employer was aware of his disability," and (3) that "the employer failed to reasonably accommodate the disability." *James v. Hyatt Regency Chicago*, 707 F.3d 775, 782-83 (7th Cir. 2013)(internal quotations omitted)(quoting *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 747-48 (7th Cir. 2011)(stating that "[t]o survive a motion for summary judgment, a plaintiff must present the court with evidence that, if believed by a trier of fact, would establish all three elements of his claim" and that "the standard rule is that a plaintiff must normally request an accommodation before liability under the ADA attaches"). Once an employee notifies his employer that he is disabled, "at that point, an employer's liability is triggered for failure to provide accommodations." *James*, 707 F.3d at 782-83 (internal quotations omitted)(quoting *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005)). After the disclosure of the disability, "the ADA requires an employer to engage with the employee in an interactive process to determine the appropriate accommodation under the circumstances." *Spurling*, 739 F.3d at 1059-61 (stating that "[f]ailure of the interactive process is not an independent basis for liability under the ADA" and "[a]n employee must still show that she is a 'qualified individual with a disability' and that a reasonable accommodation would have allowed her to perform the essential functions of her job").

Defendants argue that Curtis has failed to point to sufficient evidence to show

that he was a qualified individual with a disability who could perform the essential functions of his job. Curtis, in his opposition to the instant motion, fails to offer any arguments disputing Defendants' assertion that he was not a qualified individual with a disability at the time of his demotion, instead presenting arguments as to the interactive process issue. (Ans. SJ. 26). It is also undisputed that during the time in question, Curtis himself submitted several notes from his physicians indicating that he was unable to work. (R SF Par. 58-60). Curtis also testified at his deposition that he believed that he was unable to work during that period. (C. Dep. 198). Pursuant to Local Rule 56.1, it is undisputed that the first note provided by Curtis's physician stating that he was able work after taking leave in May 2012, was provided in January 2013. (R SF Par. 68).

Curtis has failed to meet his burden to show that he was a qualified individual with a disability. The undisputed facts also show that Costco engaged in the interactive process with Curtis to find a reasonable accommodation and ultimately placed Curtis in an optical position at a warehouse where Hinds did not work. Curtis also complains that he asked for a transfer to another store in June 2012, and Hinds refused his request. (Ans. SJ 6). However, the undisputed facts show that Curtis was still on medical leave at that time and had not been cleared to work. According to Curtis' own version of the facts Hinds properly told Curtis that she would not address the transfer issue until he was cleared for work. (Ans. SJ 6).

Curtis also argues that since Costco's disability insurer denied Curtis'

disability claim in June 2012, based on the insurer's statements in the denial, Curtis was able to work. However, whether Curtis qualified for a disability claim and whether Curtis, according to his own physicians, was able to work are two entirely separate issues. Curtis has not pointed to sufficient evidence to show that Costco failed to provide him with a reasonable accommodation. Therefore, Defendants' motion for summary judgment on the ADA failure-to-accommodate claim is granted.

## III.  FMLA Claims

### A.  FMLA Interference Claim

Defendants argue that they are entitled to judgment as a matter of law on the FMLA interference claim. For an FMLA interference claim, a plaintiff must establish: (1) that "he was eligible for the FMLA protections," (2) that "his employer was covered by FMLA," (3) that "he was entitled to take leave under FMLA," (4) that "he provided sufficient notice of [his] intent to take leave," and (5) that his "employer denied [him] FMLA benefits to which he was entitled." *James*, 707 F.3d at 780 (internal quotations omitted)(quoting *Goelzer v. Sheboygan Cnty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010)).

Defendants argue that Curtis was not denied any benefits due to him under the FMLA. Curtis admits that in September 2011, Curtis requested FMLA leave and the request was granted and that he was allowed to return to work in November 2011.

(R SF Par. 30, 33). Curtis also admits that in May 2012, after he was demoted, he submitted a request for FMLA leave, which was granted, and that upon return from such leave he was again provided employment at Costco. (R SF Par. 58, 72). Curtis has failed to point to evidence showing that he was denied any benefits owed to him under the FMLA. Curtis also argues that Hinds' alleged actions discouraged Curtis from exercising his FMLA rights. (Ans. SJ 7-8). However, Curtis must do more than point to some theoretical discouragement by Defendants. Curtis has not shown that he was prevented from exercising his rights. Nor has he indicated any other FMLA rights he would have exercised if he had not felt discouraged. Defendants also correctly point out that Costco actually provided Curtis with leave that exceeded the period required under the FMLA and when Curtis finally was determined able to return to work after his seventh month leave in 2012, Costco was no longer obligated under the FMLA to restore him to the same or an equivalent position. Therefore, Defendants' motion for summary judgment on the FMLA interference claim is granted.


### B. FMLA Retaliation Claim

Defendants argue that they are entitled to judgment as a matter of law on the FMLA retaliation claim. The FMLA protects employees from retaliation based on the "exercise[] or attempt[] to exercise FMLA rights." *Pagel v. TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012). A plaintiff who is bringing a FMLA retaliation claim, must

proceed under the direct or indirect method of proof as utilized in ADA cases. *Id.* (stating that the Court "evaluate[s] a claim of FMLA retaliation the same way that [the Court] would evaluate a claim of retaliation under other employment statutes" and that "an employee can proceed under the direct or indirect method of proof"); *Scruggs v. Carrier Corp.*, 688 F.3d 821, 826 (7th Cir. 2012)(stating that "[a]n employee who alleges that her employer retaliated against her for exercising her rights under the FMLA can proceed under the direct or indirect methods of proof familiar from employment discrimination litigation")(internal quotations omitted)(quoting *Smith v. Hope Sch.*, 560 F.3d 694, 702 (7th Cir. 2009)).

Curtis has not pointed to sufficient evidence to proceed under the direct method of proof. Curtis has not pointed to sufficient evidence to indicate any causal connection between any protected activity on the part of Curtis and his demotion. Curtis contends that there was "suspicious timing and ambiguous statements" relating to his demotion. (Ans. SJ 13). However, it is undisputed that there was an 8-month gap in between Curtis' protected activity and his demotion. As to the repeated disciplinary issues during the interim, the undisputed facts show that such issues were due to Curtis' poor work performance. Although Curtis ultimately sought FMLA leave in May 2012, he did so after his demotion, not before his demotion. As to the timing of Curtis' demotion, the timing is entirely consistent with the undisputed facts showing a series of performance problems leading up to the PIP, and then Jalowiec coming forward to accuse Curtis of ethical violations. To the

extent that Curtis argues that any conversation with Jalowiec prior to his demotion was protected activity, there is no evidence that any of management at Costco was aware of such activity. Also, although Curtis contends that Hinds was the one responsible for falsely charging Curtis with performance violations, there are ample undisputed facts showing that other management at Costco, and Costco customers observed and documented poor work performance by Curtis. Curtis has failed to point to sufficient evidence to proceed under the direct method of proof. The court also notes that although Curtis claims to have "direct evidence that Costco demoted him because of his FMLA protected activity and/or his disability," Curtis points to no such "direct evidence" and instead references only to circumstantial evidence. (Ans. SJ 11)

In regard to the indirect method of proof, as indicated above, Curtis has failed to show that he was meeting his employer's legitimate expectations. Curtis also has failed to point to similarly-situated employees outside the protected class who were treated more favorably. As to the managers referenced by Curtis, he has failed to show that they violated similar workplace rules and had similar poor work performance. Curtis also has not established that such comparators did not engage in protected activity under the FMLA and thus were outside the protected class. It is Curtis' burden to establish a *prima facie* case and he has failed to meet that burden. Finally, Curtis has failed to point to sufficient evidence that shows that Defendants' reason for Curtis' demotion was a pretext for unlawful retaliation. The undisputed

facts show that despite Curtis' repeated poor work performance, Costco gave Curtis chances time and time again to improve and even when an employee finally came forth to expose ethical violations by Curtis, Costco still provided Curtis with employment, choosing to demote him instead of terminating his employment. As indicated above, although Curtis may disagree with the various complaints filed against him by members and the accusations made by the Jalowiec accusing Curtis of ethical violations, Costco was entitled to take appropriate actions based upon such complaints and allegations. As indicated above, this court does not sit as superpersonnel office to review the wisdom of Costco' business decisions. *Blise*, 409 F.3d at 867. Therefore, Defendants' motion for summary judgment on the FMLA retaliation claim is granted.

## CONCLUSION

Based on the foregoing analysis, Defendants' motion for summary judgment is granted in its entirety.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   September 24, 2014